Good morning, Your Honor. Good morning. Speak right up. My name is Patricia Kopit. I'm a plaintiff in pro se, and I kind of don't know where to start. There's so many issues here, and I'm concerned I won't be able to cover them all. The appeal was filed based on the statute of limitations in Nevada for legal malpractice, and I don't know if you have any questions on that. I think I covered it pretty thoroughly, that the main case, which is called Kopit v. Young, is current law in Nevada. The reason my case was dismissed on summary judgment motion was the judge in the trial court believed that that case did not have current application, and since that case was decided, it's been cited by several other courts, even in the Nevada court. I submitted it, I think the case is Flowers v. Carvel in the Nevada court. They cited the case, which I assume means they believe it's current law, and it was cited by Hewitt. I'm trying to remember now. I'm getting nervous. The Hewitt case, which was also a Nevada case, and it's been cited by several out-of-court courts, like in Vermont by the Nevada Supreme Court. Not necessarily that they followed it, but they were citing it for being a Nevada law, that a malpractice case is told or it doesn't start to run until the damages are certain, which in the way they define the damages are that as long as the case is still viable, like it's going on appeal, or in the state court, he made a mistake when he did that. He dismissed it with prejudice, and he told her that he believed he may have committed malpractice. She could get another attorney, but he said he could try to salvage it, and he filed it in a different court, and the COBOCO decision was that her malpractice case didn't start running until that second filing was finally dismissed on the merits. And the wording seems to be that you don't really know the certainty of your damages as long as it's possible you may still have a viable case. And I don't know if you have any questions you want me to go on and talk, because when the Court heard about three or four other major issues that the judge in the lower court did not get to, he just decided the summary judgment motion on the one issue of the statute of limitations statute in Nevada. The statute of limitations question seems to be central to the appeal. You have well over 10 minutes of time left. Why don't we hear from the other side, and you can respond to their arguments. Do you want me to? What I was concerned, because I know the Court can make a decision on the alternative issues they brought up, and I don't know how much, because I haven't really discussed any of those, which they were basically saying, well, even if COBOCO is current law and I could have filed on time in Nevada, I still would have lost because of about three other reasons, like I assumed the risk. My case was supposedly filed too late, even before the defendant got my case. There was all these other issues, and I don't know if I want to make sure I could address those if it's important. Let me just ask you one question. How long after the stipulation dismissing your case in Nevada, was it before you refiled in California? Well, the stipulation dismissing the case was done in May of 1998. I found out about that there was no tolling involved on that stipulation around the beginning of September, around that time. Then I filed in California on October 15th of that same year. So how much time that is. Thank you. Okay. And I have another ten minutes? You have a full ten minutes, and you can respond to the arguments you hear from the other side during that period of time. Thank you. Thank you. Counsel? Yes, Your Honor. Good morning. Eugene Waite from Reno, Nevada, for the appellees. Would you speak into your mic, please? Yes, I will. I will keep my voice up. And thank you very much. I'd like to introduce my client who is here, Jeffrey Waite. He's the attorney who's involved here, and he's been helping me. And I do want to focus on the statute of limitations issue, because that's central to the correctness of what the district court did in this case. Do you disagree that you have to have damages before you can bring your malpractice action? Because I disagree with that idea, because a cause of action for legal malpractice has five elements. The relationship, a duty, a breach of the duty, causation of financial or economic loss, damage. So those are the five elements of any legal malpractice claim. And to say you have knowledge of all five of the material facts necessary to your cause of action means you have knowledge of all five. And that's exactly what the undisputed record shows in this case. Ms. Coppin is a licensed California attorney before all of these events occurred. She knew she had filed a lawsuit in California in 1992, and it was in the Federal Class Action. She was disappointed with the environment in California, and so she looked into filing her same claims in Nevada. She then went to Nevada in 1996 and retained Mr. Jeff Waite, saying, I don't like what I'm going to get in the case here in Nevada. He said, I believe and I will try my best to do as well as I can for you with the understanding that there are statute of limitations problems. You had a 1992 case in California, and you're going to opt out of the Federal action, but I'll do my best. And so the situation was that when she came to Nevada, she did have absolutely clear understanding of the risks. They're all spelled out in the case. But the fundamental basis of the district court's decision was this. She knew she had retained a Nevada lawyer to file a Nevada lawsuit. That is the Nevada lawsuit is the underlying litigation. She was aware in May that the form of nonconvenience was going to cause her case to be dismissed. So her attorney said, I will bargain for the best opportunity and conditions I can get, but it's a dire situation because we're going to be dismissed for forum shopping. 3M, a dire, did he say dire situation in any of the correspondence with the plaintiff? Well, I think it was almost they were aware of fait accompli. During the whole two years the question was, was that language or anything like it used in any of the correspondence with the plaintiff? I can't, I can't. The letter that I'm looking at talks about how this stipulation would only have a minimal effect on her case overall. That's a long way from dire impact. That is exactly the conclusion the plaintiff in this case reached when she read the stipulation. She saw that Mr. White had been able to negotiate a tolling of the statute of limitations for each of the 31 plaintiffs if they had never filed a lawsuit in another jurisdiction. So he had obtained tolling for many of the plaintiffs, and when Ms. Coppett saw that she didn't have tolling for her case, that was in September of 1998, she saw the stipulation, she realized she was angry, and at that point she could sue because she knew her Nevada case, the underlying case, had been dismissed. And she said, I didn't agree with the terms. Let me ask you a hypothetical question about Nevada law. Suppose a plaintiff in a legal malpractice case comes to court and they can establish four of the five elements that you ticked off, I think, quite accurately on your hand in your argument, but at the time the case is presented to the Nevada court, there's no evidence of damage. It's very simple. Semenza v. NMLIC. I was in that case. In that case, I tried to tell the court it was premature. The underlying case had been up on appeal, and we were suing the lawyer for legal malpractice. And I said, but, you know, I realize that the underlying case is on appeal. It's premature. And the court wouldn't listen to me, so we went to trial and we won. Then the underlying case was reversed. And, of course, then the case against the lawyer was reversed because it had been premature because the underlying litigation was still pending. So you agree that in an attorney malpractice case where the element of damage is either absent or unclear or not yet right, that the case that there's not a case? Under Nevada law, there are two types of illegal malpractice. Can I get a – can you start with a yes or a no? Yes. I'm sorry. The answer is absolutely no. In Nevada, that's too broad a statement is what I'm saying. That's why it's incorrect. The underlying litigation has to come to an end, meaning if the lawyer commenced litigation, damage occurs when the litigation – Put underlying litigation out of your mind for the moment. Plaintiff, an attorney malpractice case comes in, they establish every element but that fifth one, and they're asked about damage and they say, I don't know, or there's some repair work going on or whatever, but it's apparent to the court that at that moment there's no damage. It's premature. As I understand Nevada law, the proper avenue, the proper remedy for the court, the proper action to take would be to dismiss without prejudice. Usually a request for stay of the action because of statute of limitations. And then at some time later, the plaintiff comes back and says, Your Honor, I'm back. I've got the first four elements and I now have damage. The repair didn't work, whatever. And the court says, let's go. Absolutely correct. That's Nevada law. Okay. All right. That's the Semenza case. If the underlying litigation commenced by the defendant lawyer is terminated, that's damage. Now, here, there was a California case that Ms. Coppett was in pro per. She came to Nevada. The Nevada case was filed. She elected to dismiss her California case. So she knew she had gotten rid of her California case. All of the eggs were in one basket in Nevada. And the Nevada case was dismissed not to her liking. Does she understand she can sue her lawyer? Of course she knows that. It's odd to me that the lawyer didn't tell her that he couldn't bargain for what she would have to have to proceed so that she shouldn't have he should not have stipulated away her rights. That's a question of opinion. Mr. White believed that that was the best he could save from an unfortunate situation. There had been a Nevada case saying there's no such thing as form of nonconvenience, 1966. By 1998, form of nonconvenience was throwing out cases and he appealed to the Supreme Court and other cases he had were affirmed. The dismissal was affirmed. So he knew the times were changed. Form of nonconvenience would take out all of the people found in state. Did he bargain for different rights for different plaintiffs? No. He attempted to negotiate an agreement with 3M to toll the time of all claims for the time the Nevada action was pending. 3M said, we will agree to that provision, but not for people who are form-shopping. If people came to Nevada and filed their first case in Nevada, we'll allow tolling. We'll agree to it. But people who form-shopped had a case pending in one other state, then came to Nevada, we refused to agree to tolling. But why, then, did he say to the plaintiff here that it would have, quote, minimal effect? Well, that was the hopeful and optimistic opinion of somebody who had obtained a $50,000 settlement offer. All of his other plaintiffs had agreed to the settlement offer, settlement amount, except Ms. Coppert. She said, I want more money. And so he said, well, I hope that the dismissal in this case will have minimum impact, but, of course, he couldn't guarantee California law. He knew. As I understand it, the looking back, and that's what appellate courts do, they look back with sort of 20-20 hindsight, the state of affairs at the time this stipulation was entered was that for someone in this plaintiff's case who had filed in another jurisdiction, there was no tolling. They would not agree to it, yes. Can you show me in any of the written correspondence between your client and the plaintiff where that was explained? No, Your Honor. That's the very point, is that Ms. Coppert said it was negligently done. It was carelessly done. He didn't keep her advice, and you can imagine a lot of things that she can complain about. But that's the whole point. I'm just trying to get clear in my own mind, counsel, and help me. At the time this stipulation was entered, the defendants, the prospective defendants had said, if this is there are two groups of plaintiffs, for those that their Nevada filing was their first and only filing, will agree to toll the statute limitations for the period of time involved in this lawsuit, correct? Yes, that's the correct situation, yes. But as to this other group of people who may have filed, and whether that group includes 1 or 20 or 100 people, anyone in that second group who's filed in another State, no tolling. Correct. Okay. And yet Mr. White did not tell the plaintiff that. The record does not reflect any of that. Your position is that she knew that or should have known that? Our position is that she claimed he didn't conform to the standard of care, and we can't show anything except we would have been willing to go to trial on it, only she sued us, and it's a stale claim. Of course, there's quibbling about whether he did a good job or not. And I hear what the Court is saying. You can say he didn't do the best job he could have. He didn't keep her informed. He didn't tell her all of the minutiae of the negotiations. We'll say, well, that's part of her claim that he carelessly handled her case. But did she know that when she saw a stipulation, saw tolling for some, no tolling for her? Was she angry in September of 98? Of course she was. Well, are you suggesting that she was damaged right then? That's what Judge Reed said. I can read you the language. He said, in September, she knew all of the material facts constituting her cause of action. That's the finding of the district court. But is that the critical point? Yes. Was she damaged at that point? Her underlying litigation had been dismissed. There was no case in the world that was asserting her claim. Of course she was damaged. Her case was out of court. A plaintiff that has no lawsuit is not doing very well. Well, did she have to go back to California and try to revive her suit there first? She had to go to Reno and hire a Reno lawyer to sue her Nevada lawyer before two years expired. And she didn't. Well, I guess the issue is, when did she suffer the damage? When she saw that her underlying litigation in Nevada was dismissed. That's what Capico said. When the lawyer's underlying litigation is terminated, that's when the cause of action accrues. That's what – It sounds like what is sort of in dispute here is, your position is that the moment the Nevada case was dismissed, the clock started to run, and within two years from that moment, she had to sue. That's your position, right? That's what the district court found on summary judgment. Right. It sounds like her position is that the clock didn't start until she fully understood the impact of that event. She's saying, I'm going to force the Nevada statute of limitations to be told while I go to California and file a brand-new case all on my own. You can stay – please stay right here. This is not a jury trial. Okay. But that's the point, is she decided that she would go elsewhere and try somewhere else. And so you face the ludicrous situation that she got struck out in California, she could go to Arizona, then try in New Mexico, then Texas. But Mr. White didn't do any of that. His negligence had come to an end in September of 98. And she – what she did doesn't change that. Well, counsel, I suppose had she sued right then, you would have said, well, you don't know whether your case would be barred in California. Of course not. This is a lawsuit against a Nevada lawyer. If she had come to Nevada one month after she read the stipulation for dismissal, her case would not have been premature. It was accrued. I think we understand your position. Let's hear from the plaintiff in rebuttal. Thank you. Now, we are just on the issue of the statute in Nevada on the legal malpractice. Okay. I think his interpretation was the old law before they changed it in 1998 in the Coppico decision. At that point, when you knew any existence of damages, that was the Gonzales case that was overruled in 1997 with the Coppico case. And at that point, with her case, it's very similar to mine, she knew there was malpractice. The attorney even told her when he dismissed her case with prejudice, mine was dismissed without prejudice, and the order stipulation said I was to refile in a more appropriate forum, which it named California. And Mr. White's letter even said, the letter telling me that it was going to be dismissed with favorable terms. And then he said, you will then probably have to file in California, basically if you don't settle with that letter I think you're referring to. But back to the Coppico case, she went ahead and they tried to refile, they did refile her case in, I believe, a federal court, the same case. And the Coppico court held that it was only when the underlying cause of action, and they considered both of, you know, until it was finally no chance there was any case left at all, even though she knew it was malpractice after the first case was dismissed. That, because otherwise it would be premature and you wouldn't know the full extent of your damages, I think that's just their policy position. And it was, in the year 2002, the Hewitt case was filed. And that case quotes the Coppico case, in fact the first, when the plaintiff, she did file before, she went on appeal. Well, what happened was, her case was dismissed and then she went on to file an appeal with a different attorney. And at that point, then they also filed a malpractice case against a malpracticing attorney. And the attorney she was suing said it was premature and that he cited Coppico. But basically that case has also been, there's citations that that's good law also, because the judge in my case, Judge Reed, said he felt that Hewitt wasn't current law. It would only be interpreting cases, I guess, retrospectively. And I think where it came down to in 1997, the statute, the revised statutes were changed in Nevada. And they don't mention damages when they describe the newer version. In 1997, started July 97, they basically state that if they changed the statute of limitations from four years to two years, and they didn't mention damages, but they said they were modeling that legislation the same as the medical malpractice legislation. And when you read that, I put it in here, I don't know if you want me to find it and read it, but it basically mentions that you have, you know, two years from your injury. And then it doesn't mention damages at all, but when you go to the interpretation, it mentions that injury means all the elements of a cause of action, which include damages. Now, Judge Reed in the lower court case thought that I would be required to sue as soon as I knew there was any legal, any malpractice, even without damages. But I think clearly, Mr. Waite was saying that you might be required to file and then put a stay on it. And that, I think, may still be the law in Nevada with what they call transactional malpractice. In the Gonzales case, it was also litigation malpractice and transactional malpractice. But the Coboco case, which is, her case is very similar to mine. She had an implant case, and the attorney, like I said, he had dismissed it. And then another two years, well, he went ahead and he did say he committed malpractice. He acknowledged it. And she went ahead and stayed with him. Now, and then it was only after the second dismissal that the court found once the defendants that she was suing, the manufacturers, once, because they said that they may not raise an opposition. I mean, they may not raise a statute of limitations defense. You don't know that until it happens, which is in my situation. When I filed in California, and Mr. White had basically, all of the other decisions I put them in, never mentioned anything about the form shopping. There were some I included where there were women from, already had cases filed in other states. And there was no exceptions made. They were in situations, you know, with mine, they had filed cases in other states. And they also gave them a waiver for the time they were in Nevada. Mr. White's written several letters. Let me just mention this. I might be getting off of that. Copa Coques, I probably should get back. But basically, the Copa Coques, I think it overruled Gonzalez, which said that, you know, you just had to have some damages. And it's basically the way the Copa Coques defines damages is when you know you no longer have a viable case. And that would be in my situation once it was dismissed in California. But I was going to say, I think it was reasonable for me to think I would have had a case there. And Mr. White mentioned, these are letters afterwards. He wrote me and he said that 3M was under no obligation to offer any tolling at all. And he says, other than during the pendency of the Nevada action. Now, but he didn't even manage to get that, you know, a stipulation for me for during the Nevada action. He's acknowledging here that, I don't know why he didn't tell me that. And if I guess I would have filed the day they dismissed it. But I didn't know that I didn't have tolling when they were going to dismiss my case. And he mentions on a following letter that, let's see, Nevada case law supports the idea of equitable tolling. The statute is told during the pendency of an action in any forum. Three Reno judges all ruled the dismissal was conditioned upon the defendant's recognition of tolling during the pendency of the Nevada action. And there were other women, like I said, in my situation. And I was never warned that I would not get any tolling. When did you realize that the stipulation Mr. White had entered into on behalf of the group did not provide any tolling protection for you individually? When I got it in September and I made, around the. September of what year? 1998. And I filed in California because Mr. White basically said that, you know, go ahead and file. There were several letters that you could file in California that I may have equitable tolling. And basically, the judge in California, when I won my demur, they said they didn't believe necessarily that that stipulation prevented me from filing in California. And when I prevailed in the demur, the judge asked for us to consolidate the two cases, basically. If we could do a stipulation myself with 3M. And I did a stipulation, but they basically didn't sign it, and then they filed this summary judgment motion. But my understanding with the Copico situation, I mean, her case was dead in the water. And basically, her case was dismissed with prejudice. They went ahead, her attorney said, well, let's see what we can do. I really think it may not do them much good. But he went ahead and he filed in the federal court. And in the Copico situation, they said it was only when her case was finally kicked out of that second lawsuit that he filed. Even though he had committed malpractice in the first loss, the first case, rather, that he dismissed. And I don't remember what year it was, but anyway, they said her time only started to run after that second dismissal because you never knew, when she filed that second case, maybe the defendants may not come up, they may not raise a defense of a statute of limitations. And you don't know that until- You need to wind up your- Okay, well, that's basically my argument. But I think I made it, I probably was very redundant in my appeal. But I think I basically said I think my case is similar to Copico. And I believe Copico is good law. I think it's obviously good law in Nevada. And you do not have to, they want to, it would be premature, I believe. And I wouldn't have been required to have filed at that time. I think they would have said you're premature. Okay, all right. Thank you. Thank you for your argument. Thank both sides for their argument. The case just argued will be submitted for decision. We'll proceed to the next case on the calendar, which is Belugan versus Gonzalez.
judges: Lay , B. Fletcher, Hawkins